Ladies and gentlemen, good morning. We have three cases on the calendar this morning. After the first one, we will take a brief indeterminate but brief recess, and an even more distinguished panel will return. And our first case is Innova Technology v. Seagate, 2016, 17, 49, 51, and 2039. Mr. Wu. Good morning, Your Honors. It's the Court. Your Honor, the 057 patent was allowed over the Sullivan and Sata combination only after the patentee added the predefined categories of command set limitation. That limitation provided two things that were not disclosed in the prior part. One, the use of the predefined categories... Let me ask you a housekeeping question. Yes, Your Honor. In the blue brief at 56, you cited JA 3631-32. And so I looked, and 3631 wasn't in the joint appendix. Is it something I need to see? I'm sorry, Your Honor. That was the opening brief at 56? Blue brief 56. JA... I'm sorry. JA what, Your Honor? 3631-32, but 31 isn't in the appendix. And I want to know if I need to see it. Well, you would if you wanted to verify that the quoted text is there. I'm sure it was an oversight, Your Honor. I apologize. But the text is quoted there. There's a signification in that, et cetera. Sorry, Your Honor. I apologize. That limitation, the predefined categories of demand-set limitation, implied two things that were not... Let me ask you another question. Yes, Your Honor. At 66, you cite to 3623. You purport to quote language from that that could undermine the foundation of Seagate's expert testimony. That's not in the appendix either. Your Honor, I actually found that one myself when I looked at that part of the record, and that was an oversight. Well, you ought to take more care. I'm sorry? I said you ought to take more care. Yes, Your Honor. I agree. I apologize. Well, while we're on this, I'd like to ask you how can you justify having asked for 5,000 extra words on the ground that you had three appeals, but they're all the same, and you didn't differentiate between them? It looks like you got an extra benefit. You burden the court based on false pretenses. No, Your Honor. They're all the same, but there are slight differences. You're right. There are commonalities to all of them, and we felt that it was important to be able to explain all the... I don't recall seeing the differences. They all hung on the same predefined category language. Yes. Go ahead and proceed. Yes, Your Honor. But I want to convey that we thought this was an abuse of the court's procedures. Well, we anticipated that there would be differences at the time we asked for it, and it turned out not to be the case because we wanted the folks to know why do you use... If you found out that wasn't the case, did you consider maybe not using the extra words that you had requested? That thought didn't cross my mind, Your Honor. I apologize. It seems that I'm off to a not very good start here. The two things that are not disclosed in the prior are use of the predefined category of command set to determine encryption decisions, and making that encryption decision without de-encapsulating the packets by stripping the headers from payload. Now, the Seagate... Can I interrupt you? I'm sorry, I have a question about that. Yes. I understand what you're talking about when you're talking about how the prior is different from this claim, and you're making those points about not having to encapsulate and de-encapsulate, but I don't see that in this language responsive to the first date of FIS associated with a predefined category of command set. That's really broad. You're only talking about a first date of FIS associated with a predefined category of command set. It doesn't say what that command is. It doesn't say that there's a second date of FIS that's associated with a different command set and results in some sort of different action. It seems to me as if a lot is being read into this claim that simply isn't there. So the way that works, according to the specification, is to make that decision without having to de-encapsulate, and that level of detail is found in the dependent claims as well. Claim 14, for example, talks about how that is done in the link layer, which is a layer that's not the layer where you de-encapsulate. You de-encapsulate at the transport layer, which is disclosed in the specification. Did you argue Claim 14 separately from Claim 1 before the PTAB and before this court? Separately? Knowing that PTO claims can rise and fall together if they're not argued separately. I don't know that we argued it separately, Your Honor, but that is in the record. Claim 14 is one of the claims that are being challenged in this matter, and we have addressed that. And what the board and CDA did was point to no disclosure in either of the two references, Sullivan or Lozada references, that disclosed either of those two things, that is using predefined categories to encrypt or doing that without stripping the header from the payload, that is without de-encapsulating. And they only point to general principles from Sullivan that you don't encrypt commands and that in SATA certain data payloads are associated with certain command packets. The board and CDA criticize Inova for not reading the references together, but what they really mean by that is these elements are not discussed in either reference, and so they have to extrapolate from those general principles to arrive at the missing element. And that's not reading the references together. That's finding the missing element through a hindsight analysis. Dr. Long, their expert, almost admitted as much when he could not explain during his deposition how he put together the list of categories of command sets that just happened to match the list from the 057. So let me ask you about their expert. You argue in various places in the brief that PTAB improperly credited Seagate's attempt to use common sense and you cite to their expert. Does the PTAB's, I couldn't find anywhere where they used the phrase common sense in the written decision. Can you show me where they credited Seagate's expert's argument regarding common sense? They didn't expressly do so, but they relied on his declaration and his declaration talked about common sense. So that's a bit of a double reach, isn't it? Well, no, Your Honor. If they relied on his declaration and all it said was common sense. He only said it once. He only used the phrase once that I explained. That's right. I thought that his analysis spanned about five pages and said a lot more than just common sense. I think it starts at JA 1080 and goes all the way through to page 1086. And it says a lot more than common sense. That's right, Your Honor. It does. Okay, I thought you just said all he said was common sense. Well, all he said was with regard to these particular points that were not in the prior art. Actually, the part I read at 1080 to 1086 all relates to this responsive to the first data FIS limitation that we're all talking about today. That's correct. But what he explains in that discourse is only the general principles of Sullivan and the SOTA specification. That is, he talks about how Sullivan teaches how you don't encrypt commands and you only encrypt the data payload. He talks about how the SOTA specification tells you that there are certain packets that are associated with certain command packets. But what he doesn't tell you is how you get to the specific limitation of predetermined categories of command sets from… whether you were to encrypt or not encrypt the subsequent FIS packet. He did explain that association, but there's nothing in those descriptions that talk about or suggest using this predetermined category of command set to encrypt and to do so without de-encapsulating. Where in your claim does it say do this without de-encapsulating? It doesn't say so. It doesn't say so in so many words. In Claim 14, it makes explicit reference to using the link layer to accomplish this task. But also, again, you did not argue Claim 14 separately from Claim 1, right? I can't say that I did, Robyn. Okay. But it's in the claim. It's in the claim. It doesn't talk about de-encapsulation even in Claim 14, right? It doesn't. It doesn't. It talks about how it's being done in the link layer. And the specification teaches how that is before the de-encapsulation takes place. So you're saying it's necessarily so from the language of that claim that it must occur before de-encapsulation. That's correct. Because as the specification teaches, the de-encapsulation procedure happens in the transport layer, which is the next layer past the link layer. So this pattern is about that. So what Dr. Long talked about was how these general principles work, and then he extrapolates from that to get to the particular method of the 057 pattern. But there's no explanation as to how you actually get from there from one place to the other. In the blue brief, you quote from his statement that he's not aware of any evidence of commercial success, et cetera, other secondaries. How is that evidence of anything other than his ignorance? And why on earth should their expert be expected to present evidence of objective indicia when it's used as rebuttal evidence to a prima facie case of obviousness? Well, the case law talks about how the secondary considerations must always be considered in any kind of obviousness analysis. Dr. Long reaches the conclusion that this particular limitation, the predefined category of compensate, was obvious without looking at any of the secondary considerations. That's the only point we're making there, Your Honor, that he didn't do that. Mr. Wu, you're well into your rebuttal time. You can continue or save it. I guess I'll have to save it, Your Honor. Thank you. Mr. Brooks. Thank you, Your Honor. I'm going to make three points. The first point I'm going to make is about Claim 14. On the appendix 24 in the board decision, the board said upon reviewing unchallenged contentions and supporting evidence regarding dependent claims 2 to 4, 6, 8, 10 to 15, and 20 to 27, we find sufficient evidence. So Claim 14 was unchallenged. We contended it was obvious. We presented our case, and they did not challenge that. So 1014 is not challenged below, not challenged on appeal. Also, there was no argument for any special claim construction of Claim 1 in which you would read something from one of the dependent claims. Did you seek construction? No. Did you seek construction of this limitation? Neither one. And the PTAB didn't construe it, you're saying, did it? Yes, Your Honor, that's correct. Okay. That's the first point. The second point I want to make is simply about the Sullivan reference, which is the beginning reference here. The Sullivan reference is the first reference the PTAB was looking at, and we're all talking about this data FIS associated with a predefined category of command set. The important point we want to make about Sullivan is there was a disagreement about the scope and content of Sullivan. We argued that Sullivan should be read broadly because it has these broad statements that it will handle encryption with various different types of protocols, and that what you want to do explicitly incorporates the SATA standard. Yes, exactly. Repeatedly. And they say you look for the user data and you encrypt that. You look for the control information, you don't encrypt that. And then they give an example. That example is not serial ETA. And then they go on to have broad claims, once again emphasizing that you're looking for user data. And the dispute below is the following. Should the PTAB read Sullivan as a broad teaching in which Sullivan is saying, look for user data and encrypt that. Look for control information, don't encrypt that, and apply it and accommodate this system, that's the word they use, to whatever protocol you're using. Or, should the PTAB interpret Sullivan almost like a straitjacket and say the following. There is one example in which the user data is in a payload and the command information is in a header. And in that one example, Sullivan releases the user data for encryption and then eventually brings it back together. Should that be the only way you ever read anything coming out of Sullivan? In other words, no matter what protocol you're using, even serial ETA, in which you split up, you turn it into a transaction. You go from a packet to a transaction. And in a SATA situation, you have a command in the first FIS, a resulting data FIS, a few FISs later. And the resulting data FIS will either be user data, depending on the command, or control information. And what Enova was arguing to the PTAB is, ignore the command structure of SATA. Ignore the fact that a person of ordinary skill in the art understood that commands dictated the contents of the resulting FISs. Ignore the fact that a person of ordinary skill in the art knew that commands were associated with resulting FISs. Ignore all that. And here's what you should find. Based on Sullivan, the combination of Sullivan and SATA will be inoperable. And they make this argument over and over again. Well, other than its compound nature, that'd be a swell question to ask an expert on cross-examination. Yes, yes. And that's right. We'd have to break it down, but that's right, Your Honor. And so we're...  Absolutely, Your Honor. And so what we were saying to the PTAB is, we don't think it's reasonable to read Sullivan as treating the same packet the same way every time, regardless of the protocol, when Sullivan explicitly says it'll work with different protocols and it'll accommodate different protocols. And so what the board did is it made very specific findings. I just want to briefly mention them. The board rejected the patent owner's argument that Sullivan taught that, quote, each packet must be treated identically for encryption purposes, regardless of what protocol you're working with. The board found no support for a patent owner's argument that every packet should be treated the same way, regardless of the communication protocol. And the board found that it's strange grudgility that a skilled artisan would apply Sullivan in a manner that the patent owner urges, when doing so would result in a non-functioning device. This is at Appendix 19. And then the board said, patent owner's reading of Sullivan does not account adequately for the disclosure in Sullivan that is broader. Here's my point. The issue on appeal is simply this. The PTAB said we're rejecting your straitjacket argument of treating every single packet the same way. That's not reasonable. There's no support. It's strange grudgility. Instead, we're going to interpret the scope and content of this reference broadly. So on appeal, the question is... Did the PTAB rely on the admitted prior art in Column 3 to support that? Or did anybody mention the admitted prior art? The conventional method? Yeah. If you look at Column 3, lines 34 to 50, of the patent in suit, the 057 patent, we talked about how this bypass true and bypass false concept was in the prior art. Yes. What the board relied on, the expert went into how everything works. How that was understood. A person with ordering skill understood how this all worked. This was all common knowledge. Those kinds of things, how encryption works and the like. But importantly, the board absolutely rejected the idea that when putting Sullivan together with SATA, it would somewhat be inoperable. And I just want to make the point that on appeal, the NOFA industry prior brief says the following. In contrast, this is page 25. The board here explicitly recognized that the Sullivan-SATA combination would yield an inoperative device. The board did not explicitly recognize that the Sullivan-SATA combination would yield an inoperable device. The board said the opposite. The board explicitly rejected the argument that the combination would yield an inoperable device. The board said, you're misinterpreting this paragraph. That's my second point. I want to jump to my third point, which is, and this is going to this idea of commands being associated with resulting FISs. Over and over again, our expert explained that in SATA, it's all about separating. Remember, we had one packet in Sullivan with the command information in the header and the payload information having the user data. That's the one example in Sullivan. But when you move to SATA, everyone understands it's now a transaction. So the first FIS has the command and the resulting FIS has the user data. And what our expert explained repeatedly, kept using the word association, you always know in SATA that SATA itself has created this relationship, this association between a command and resulting user data. That's created by SATA. Their expert agreed. Their expert said, I'm looking at how Seagate's expert has set forth these FISs. I agree. You got it right. So the experts agreed that when you had a command and a resulting FIS, you would know whether it's user data or control information. So there was no disagreement on the experts. And I just want to make this point about their reply brief. Even though it was undisputed that there was an association created by SATA between commands and resulting FISs, which, as Your Honor was mentioning, our expert went into the steps as to how that would lead to this predefined category. Sullivan tells you search for user data and encrypt that. Don't encrypt control information. Now you go to SATA. Where do you find user data? You follow the commands. Certain commands tell you where user data is. Other commands will tell you control information. And that is recognized by the prior art. In other words, a person of ordinary skill and art understood that. And each expert agreed that that's how it worked. And what do they say in the reply brief at page 24? They say the following. This is the end of this appeal. They say this. The inventor realized, this is on page 24 of the reply brief, that certain SATA commands, but not all of them, were consistently associated with streams of subsequent data FISs or packets with payloads that should be encrypted. So that's what the inventor realized. What the inventor realized is that certain SATA commands were associated with things that should not be encrypted. And then conversely, certain commands were consistently associated with streams of subsequent data FISs with encryptable payloads. In other words, what the inventor realized is there were certain commands that would say you don't encrypt because that's control information, and certain commands that would say you do encrypt because that's user data. Those two things that the inventor realized are exactly what our expert said is in SATA. SATA creates that. There's nothing to realize. There's nothing to invent. And their expert agreed that our expert was right. So our point is there was no invention here. What there was was a reference that said, look for user data, encrypt that. And to your honest point, that's all we need for this appeal. We don't need anything more. There's nothing else going into this. And when you go to SATA to look for the user data, what do you do? SATA itself, not our expert, not common sense, SATA itself created a relationship between commands and user data. So if you want to know where the user data is, you follow the commands. And that's exactly what our expert said. And they do admit in footnote one, one in skill and the art may have known from the SATA standard that certain commands are generally associated with certain subsequent data fizzes. So we think where we are is essentially undisputed that SATA creates this relationship. And what our expert did step by step over pages is explain how once you start with Sullivan and you're told to accommodate different protocols, when you implement Sullivan with SATA and you follow the commands, you're going to end up with this predefined category. And why is that? Because Sullivan says encrypt user data. So to find user data, you just look for the commands that show user data. And there's no argument that our expert got that wrong, that our expert came up with the wrong commands. And so for that reason, we would ask that the court affirm. Thank you, Mr. Gross. Mr. Wu, you have a predefined time. But since we asked you a lot of questions, we'll give you your full five minutes if you need it. Thank you, Your Honor. The first point I want to address is the fact that we did not challenge Claim 14. We did challenge it, but it's on the same basis that we challenged the other claims. As to the extrapolation from Sullivan and SATA references, the board, and I just heard counsel criticize Inova for not showing where in Sullivan it said that every package should be treated the same way. But I think that's exactly backwards. The burden should have been on Seagate, the petitioner, to show where in Sullivan or SATA there was a discussion of doing encryption in a way that was different from Sullivan. That is, without de-encapsulating the packets. He points to the relationship between the certain command packets and certain data packets that's expressly set out in SATA. But he doesn't really put them together and explain why it is that you would use that particular method of doing it. There's never any discussion of that in Dr. Long's declaration or his deposition testimony. All he says is that somebody else put together this command set for me. I don't know how it was done. They're just the obvious ones. That's conclusory in its hindsight after looking at the answer which was given in the 057 patent. Only one case that's been discussed by both sides has found that the proper use of common sense to fill in a missing limitation. And that was the Perfect Web case. The Perfect Web case was about an email delivery system with four different elements, A, B, C, and D. The missing element there was element D, which was just a rehash of A, B, and C, which is the actual method, the core method of that pattern. D just said, repeat A, B, and C until you get to the desired number of delivered emails. That was straightforward and simple. And on that basis, the court allowed common sense to fill in the blank. But there's no discussion in either reference that tells you that you should use a predefined category of command set to do encryption decisions. And there's nothing that says to a person of skill that you should do so without de-encapsulation. The Arendi case. Are the 057 patents groups of commands all associated with either user data, which is encrypted, or control information, which is not encrypted? It identifies a set where the associated data fizzes do not contain any embedded commands themselves. The Arendi case talked about the use of common sense in the obviousness determination. And it said that was subject to three caveats. One, that it's usually used to fill in a missing motivation to combine. That's not what we have here. And two, it's only allowed where you have a reference to common sense. I'm sorry? I said you don't have a reference to common sense in the decision. You're arguing for an implicit reference. But that's all that the board really looked at. The board looked at Dr. Long's declaration. And if you look at the section where he discusses how you get to this limitation of predefined categories of command sets, that's really all he said. I mean, if you're saying weighing the credibility of a witness is common sense, I'd agree with you. Well, no, that's not what I'm saying. What I'm saying is that he never really explains how one would really get from the idea that you don't encrypt commands and that you have an association of certain commands and packets in SADA to the idea that you would definitely use a predetermined category of command set to do the encryption decisions without opening up the packets. Sullivan only talks about opening up the packets. Sullivan does not talk about any other... But your claims don't talk about opening and not opening the packets either. Claim 14, again, talks about the link layer. And the link layer is implicit in that. There's no... You haven't argued that before this court or before the PCAP. That expressed argument was not made to the PCAP. I agree. I see that my time is up. I don't know if you have any more questions. Thank you, Mr. Wolfe. Thanks for your time.